E-FILED
Tuesday, 28 May, 2019  02:27:17 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| KOMINIQUE J.,<br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | Case No. 4:18-cv-04052-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10) and the Commissioner's Motion for Summary Affirmance (Doc. 14). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded. [1]

**I**

On July 9, 2014, Plaintiff Kominique J. filed her application for supplemental security income (SSI). Her SSI claim was denied on September 23, 2014 and upon reconsideration on May 20, 2015. She requested a hearing concerning her application for SSI on July 5, 2015. A hearing was held before the Honorable David W. Thompson (ALJ) on February 24, 2017. At that hearing, Kominique was represented by an attorney and a vocational expert (VE) testified. Following the hearing, the ALJ issued an unfavorable decision on April 28, 2017. Kominique's

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 7) on the docket.

request for review by the Appeals Council was denied on January 30, 2018, making the ALJ's Decision the final decision of the Commissioner. Kominique filed the instant civil action seeking review of the ALJ's Decision on March 13, 2018.

## II

At the hearing, Kominique was 37 years old and lived in the same household with her 18-year-old and three-year-old sons, though her 18-year-old was at that time detained in the Juvenile Department of Corrections. She claimed her ability to work was limited by depression, bipolar, anger issues, and anxiety. AR 248. She testified she lived in low income housing. She also testified she received food stamps and had a medical card from the State of Illinois. She obtained her GED in 2001 and began to take classes at Blackhawk College and then withdrew. Kominique believed she last worked in 2011 when she was employed through a "temp agency and my assignment was at a meat packing company called AMERCO." AR 38. The ALJ and Kominique's attorney agreed that there was not a lot of evidence to support a finding of any past relevant work.

Kominique then testified she took Seroquel and alprazolam. She said they were effective for what the doctors wanted them to do. She said, "I think they're working out pretty good for me." AR 39. She said she was previously hospitalized for a psychiatric issue in 2008 at Robert Young. Since 2008, Kominique had been taken to Robert Young for psychiatric issues in 2012 and 2014. She next testified that she saw Stacy Roth, a registered nurse practitioner, and had seen "a couple psychiatrists over the last couple years[.]" AR 41-42. Kominique's attorney commented to the ALJ, however, that there was no psychiatrist on file for Kominique. Kominique stated she had seen Roth "at least six or seven times." AR 43.

Kominique next testified that she came from "a pretty dysfunctional home," left home when she was 12 years old, and "didn't always make the best choices as

a younger child[.]"  AR 44.  She said she "pretty much got taken advantage of most of [her] life and physically and sexually abused was a big part of my issues that I hindering [sic] me from putting my life in a normal way I guess you could say."  *Id*.  At the time of the hearing, Kominique was able to take care of her personal hygiene needs "some days better than others."  AR 45.

Kominique's attorney then asked her why she applied for disability.  Kominique answered:

> I found that I wasn't able to, I don't know how to explain it.  I wasn't able to keep up with my every day routines like some people were.  I noticed that I was having trouble with that and so I kind of figured I should get some help and see what was going on and why I couldn't stay focused and do things when I needed to do them.

*Id*.  She further explained why she believed she was disabled:

> I have a hard time dealing with people, my anger issues have gotten a lot better but I notice that I do a lot better when I work on my own, and there's very few jobs that I'm qualified to do where I can just work by myself.  My medication is another issue.  I was actually let go of my last job because I was taking my prescribed medicine and I didn't know that they considered them narcotics and I'm not supposed to operate machinery when I'm taking those.

AR 46.  Kominique believed her anxiety affected her the most in terms of successfully being able to work.  She testified "if [she became] overwhelmed or if [she became] nervous or anxious [she] pretty much just [went] into a panic attack[.]"  AR 47.  She also testified that she experienced panic attacks "maybe" a couple times a day "but not full-blown panic attacks[.]"  *Id*.  She explained her panic attacks were not as frequent as they used to be because she took her medication regularly, but she was unable to make all of her panic attacks stop.

Kominique's attorney next asked her if she had any problems with attention or concentration when she tried to do something.  Kominique answered:

Yeah. There's a lot of times where I have to just stop and regroup and start over again. I can get frustrated very easily. I do have a hard time staying on task like I can't just clean up one room at a time in my house, I have 16 different mental projects going and never really get anything all the way done, but I get a lot of things started though.

AR 48. Her plan for the future included approval to put her younger son in daycare so that she could start going to classes again. Her attorney questioned whether she would be able to focus on whatever tasks she was given in an unskilled work setting eight hours a day with breaks every two hours. Kominique answered, "I don't think I could do that and take my medication because my medication it kind of slows me down . . . My reaction times are not as quick as they should be sometimes after I take my medication." AR 50. Her attorney lastly mentioned that Kominique's file included the latter's thought that she may have had some head injuries in the past due to severe beating. Kominique thought she had been tested for a traumatic brain injury in the past, she had seizures "at one point," and she took Depakote for those seizures for a while.

The VE was then questioned. The following colloquy between the ALJ and VE occurred:

ALJ: . . . I'd like you to assume we have an individual the same age, education and experience as the claimant. Because of all the individual's mental impairments and symptoms combined the individual may during times of symptom's [sic] exacerbation have moderate limitations in one, concentration, persistence and/or pace on attempting certain detailed tasks. So the individual is limited to jobs that only require up to detailed but involved[2] tasks with few concrete variables, little in the way of change and job process from day to day, jobs that can be learned in 30 days or fewer and the jobs with multistep self-evident tasks easily resumed after momentary distraction. And, two, social functioning so the individual is limited to jobs

---

[2] The ALJ's RFC finding in his Decision provided "detailed but *un*involved tasks." AR 19 (emphasis added). Kominique made no issue of this apparent typo in the transcript.

that do not require more than occasional work-related
interaction with the public, coworkers and supervisors. Are
there jobs in the economy such an individual can perform?

VE:    Yes, Your Honor.

AR 52-53. The VE proceeded to identify jobs at the light, medium, and sedentary
levels. The ALJ next asked the VE to assume the individual would miss four or
more days of work per month. The VE answered such an individual could not
maintain competitive employment. The ALJ then asked the VE to assume the
individual would, for whatever reason, need extra rest breaks or would need
redirection on the job, "but the bottom line is that they are less than 80%
productive while on the job." AR 54. The VE answered that an individual
producing at that level could not maintain competitive employment.

Kominique's attorney then questioned the VE. He asked:

Mr. Walker, were there any limitations in that first hypothetical that
the Judge asked you limiting the hypothetical individual in terms of
concentration, persistence and/or pace regarding unskilled tasks? I
did hear the language in the hypothetical about when it's something
[sic ] detailed tasks.

AR 55. The VE answered, "Well I understood it to be, well, no." *Id*. The attorney
later asked:

Q:    Okay. This, I don't know how to ask you this. Judge, maybe
you'll give me a little latitude here. We had a hearing several
months ago, Judge Schwartz asked you in that case if there
were a number of moderate limitations and I'll list them for you
here. Even though he said I can't define what moderately
limited is for you here given the sheer number of them and
giving that they're moderate, not mild, not marked, but
moderate limitations would, would just the number of
moderate limitations in these specific areas allow for work or
not? And the areas are maintaining attention and
concentration for two-hour periods between breaks,

maintaining regular attendance, performing work activities within a schedule, being punctual for work, performing at a consistent pace, and the issue of distracting coworkers or peers or exhibiting behavioral extremes in the work setting. If a person had moderate limitations in all those areas would that alone without a definition of moderate give you enough to answer the question whether the work could be successfully be [sic] performed in an unskilled work setting?

A:    Well, it's actually a combination of all those factors. If a person having a problem with attendance and punctuality maintaining pace, following a work schedule, all those in combination would if they hit those levels of 90%, you know, then they would lose their employment.

AR 57-58.

### III

In his Decision, at Step Two, the ALJ determined Kominique had the following severe impairments: affective disorders and anxiety. AR 17. At Step Three, the ALJ considered the "paragraph B" criteria to determine whether Kominique's mental impairments met or medically equaled the criteria of the relevant listings. The ALJ determined Kominique had: moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. AR 18. As for concentration, persistence, or pace, the ALJ discussed a September 2014 psychological consultative examination during which Kominique was "very slow with the processing" of subtracting 7 from 100 for several calculations. The examiner opined "for the age this is a borderline deficient short-term memory/concentration performance" and "clinically there was the impression of anxiety and difficulty staying totally focused during this interview." AR 18 (citing AR 369). The ALJ also pointed out records which indicated

Kominique's attention and concentration were at baseline and assessment notes which recorded no impairment in attention or concentration.

> The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: because of all the individual's mental impairments and symptoms combined, the individual may, during times of symptoms exacerbations have moderate limitations in (1) concentration, persistence and/or pace when attempting certain detailed tasks, so the individual is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, jobs that can be learned in 30 days or fewer, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction, and (2) social functioning, so the individual is limited to jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors.

AR 19.  The ALJ first pointed out that Kominique's work history showed she worked only sporadically prior to her alleged disability onset date which "raise[d] a question as to whether the claimant's continuing unemployment is actually due to medical impairments."  AR 20.  The ALJ then addressed the medical records pertaining to Kominique's alleged affective disorders and anxiety.  The ALJ observed that treatment had been "essentially routine and/or conservative in nature with counseling and medication management."  AR 20.  The ALJ commented that the fact Kominique was prescribed and took the "appropriate medications" for her alleged impairments weighed in her favor, "but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms and that her worst bouts of mental impairment occurred when she was not regularly taking prescribed psychotropic medications."  AR 20-21.  The ALJ concluded the longitudinal medical record "strongly suggest[ed] the prolonged lack of medication combined with increased personal stressors

exacerbated the symptoms of her affective disorder and anxiety but these symptoms became well controlled with sustained medication compliance." AR 21.

The ALJ proceeded to discuss results of a September 2014 psychological consultative examination, a September 2014 psychiatric evaluation, December 2014 and March 2015 treatment notes, an October 2015 medication management and follow-up, January 2016 treatment notes, an August 2016 medication management visit, and a December 2016 Diagnostic Annual Re-Assessment. The ALJ thereafter addressed the opinion evidence of record. The ALJ determined:

> As for the opinion evidence, the [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of "not disabled." Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

AR 22. The ALJ next considered the GAF scores of record and rejected them because they were not from acceptable medical sources, some were based largely if not entirely upon Kominique's subjective complaints, and the lower GAF scores indicated deficits in adaptive functioning that were neither supported by contemporaneous objective findings or the longitudinal evidence.

The ALJ explained:

> Due to the combined symptoms and effects of the claimant's affective disorders and anxiety, the individual is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, jobs that can be learned in 30 days or fewer, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction, and

jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors.

AR 24.  Finally, the ALJ summarized:

> [B]ased on a review of the medical evidence of record, as well as the claimant's testimony at the hearing and the record as a whole, the undersigned finds the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms. She has retained the capacity to perform all exertional levels of work, with minor nonexertional limitations, throughout the period under consideration.  The claimant has not demonstrated that the medical evidence supports greater limitation than in the [RFC[ above, and the undersigned gives the claimant all benefit of reasonable doubt.

*Id*.

## IV

Kominique argues the ALJ erred in assessing her mental RFC.  Specifically, Kominique argues the ALJ erred in failing to address the agency doctor's opinion that her mental impairments would lead to absenteeism, and the ALJ erred in failing to relate deficiencies in concentration, persistence, or pace in his finding of RFC and questions to the VE.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence.  *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."   42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966.  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Kominique claims error on the ALJ's part at Steps Four and Five.

## A

Kominique first argues that the ALJ failed to address or explain the weight he gave to Dr. Low's opinion[3] that Kominique had moderate limitation in her ability to maintain regular attendance and to be punctual. She points out that the ALJ's RFC relayed no limitations in attendance or punctuality to the VE. She argues that because the ALJ did not address this issue at all, he robbed the Court of the ability to assess the validity of his ultimate finding that Kominique suffered no limitation in her ability to attend the workplace. She further points out that the VE testified a person who missed four or more days of work per month could not maintain competitive employment, and thus, the ability to maintain steady attendance was critical to assess the ability to maintain competitive employment. The Commissioner argues Kominique seeks precision that the ALJ did not have to provide when talking about the weight given Dr. Low's opinion. The

---

[3] Thomas Low, PhD's opinion was dated Mary 19, 2015. Previously, State Agency Dr. Russell Taylor PhD provided the same opinion on September 22, 2014. These are the opinions the ALJ referred to in his Decision. Kominique limits her argument to Dr. Low's May 19, 2015 opinion.

Commissioner argues, instead, the relevant question is whether the ALJ's Decision when read as a whole and with common sense provides some glimpse into his reasoning.

Of course, an ALJ must build a logical bridge between the evidence of record and his conclusions, though he need not discuss every piece of evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ stated:

> As for the opinion evidence, the [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of "not disabled." Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

AR 22. In doing as the Commissioner says – reading the ALJ's Decision as a whole and with common sense – the Court is unable to determine exactly which "other reasons" he relied upon to reach conclusions similar to Dr. Low's. While Kominique highlights just one aspect of Dr. Low's opinion that she says the ALJ did not sufficiently address, the Court cannot find where the ALJ explicitly addressed any aspect of Dr. Low's opinion, how it lent support for his RFC finding, or why any part of it was rejected; the ALJ made no additional mention of Dr. Low's opinion in his Decision and certainly made no attempt to explicitly state which of his conclusions were "similar" to Dr. Low's. The ALJ failed to build an accurate and logical bridge. The Commissioner contends that Kominique's argument regarding the ALJ's evaluation of Dr. Low's opinion is inconsequential because the ALJ's RFC finding is consistent with Dr. Low's opinion. In fact, as discussed *infra*, the ALJ's failure with regard to Dr. Low's opinion highlights the ALJ's shortcomings in accounting for Kominique's

12

moderate limitations in concentration, persistence, or pace in the RFC finding and questions to the VE.

**B**

Kominique next argues that despite the fact the ALJ limited her to unskilled work, his RFC finding and questions to the VE contained no limitations in concentration, persistence, and/or pace that would affect the ability to do that level of work. Kominique emphasizes that her limitations arise from her mental illness and affect the kinds of tasks she can do, not the other way around. She accordingly points out that the ALJ ran afoul of agency policy that sets out all jobs require the ability to maintain concentration and attention for extended periods, and the ability to maintain attention for extended periods is critical for performing unskilled work. The Commissioner does not directly address Kominique's argument that the ALJ erroneously presented an RFC and hypothetical question to the VE that included an individual with moderate limitations in concentration, persistence, or pace only in terms of detailed versus unskilled tasks. Instead, the Commissioner first provides the regulations' definition of "moderate" and then contends there is no contradiction in assigning a rating of moderate difficulties yet concluding that the claimant has adequate ability. The Commissioner argues there is no support for Kominique's assertion she could not pay attention for a sufficient period to time to do the jobs the VE identified, she has not shown her productivity would be as low as less than 90%, and she has not sustained her burden to show that prejudice resulted.

"Both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015), *quoting Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014). Included in the mental limitations a VE must consider are deficiencies in concentration, persistence, or pace. *Id.*; *Winsted v. Berryhill*, -- F.3d -

- , No. 18-2228, 2019 WL 1941179, at *4 (7th Cir. Feb. 8, 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations"). In this case, the ALJ's RFC finding and question to the VE are deficient.

First, it appears Kominique is correct that the ALJ determined she only had limitations in concentration, persistence, and pace in the performance of "certain detailed tasks." The relevant part of the RFC finding provides, "[T]he individual may, during times of symptoms exacerbations have moderate limitations in (1) concentration, persistence and/or pace when attempting certain detailed tasks . . . ." AR 19. The following colloquy at the hearing reveals the VE understood the hypothetical to be so tailored:

> Q.    Mr. Walker, were there any limitations in that first hypothetical that the Judge asked you limiting the hypothetical individual in terms of concentration, persistence and/or pace regarding unskilled tasks? . . .
>
> A.    Well I understood it to be, well, no.

AR 55. Kominique's point that "certain detailed tasks" is erroneously vague is well taken. Furthermore, nowhere else in his Decision does the ALJ explain why he found Kominique moderately limited in concentration, persistence, or pace only when attempting "certain detailed tasks." The Court cannot trace his path of reasoning in concluding Kominique was only limited in those areas when performing detailed tasks. If he relied upon some part of Dr. Low's opinion to make that determination, the Court cannot discern that where the ALJ stated

without elaboration that he gave that opinion "some weight."[4] If he relied upon the medical evidence of record to make that determination, the Court cannot discern that either where the ALJ merely recited the evidence and summarily concluded, "Due to the combined symptoms and effects of the claimant's affective disorders and anxiety, the individual is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables . . . ." AR 24. The ALJ did not identify the evidence that led him to conclude Kominique's moderate limitations in concentration, persistence, or pace only arose in her performance of certain detailed tasks. Notably, the ALJ did not address Kominique's hearing testimony at all in his Decision. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do"); *and* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record").

Second, the ALJ did not build a logical bridge between the limitations he *did* otherwise include in the RFC and the record evidence. Kominique argues the ALJ merely limited her to unskilled work in the RFC and questions to the VE, but he did not account for her mental limitations in the performance of that level of work. The Court is unable to determine whether the limitations in the RFC and hypothetical address her moderate limitations in concentration, persistence, or pace in the performance of unskilled work, or, whether the limitation to unskilled work *alone* was the way the ALJ accounted for such limitations. The VE understood that the ALJ did *not* limit the hypothetical individual in terms of concentration, persistence and/or pace in the hypothetical in terms of unskilled

---

[4] Moreover, in the narrative section of Dr. Low's opinion, he stated Kominique retained the "mental capacity to understand and remember simple and detailed *instructions*." AR 82 (emphasis added). Dr. Low did not opine Kominique was able to perform "detailed tasks."

tasks.  *See* AR 55.  Once again, the fact that the ALJ attributed "some weight" to Dr. Low's opinion does not aid the Court in tracing the path of the ALJ's reasoning. The limitations contained in the RFC do not mirror the narrative section of Dr. Low's opinion, and if the limitations within the RFC finding were intended to account for the areas on the form Dr. Low marked as "Moderately limited," the ALJ did not say as much.  The ALJ connected the dots (the record evidence and his ultimate conclusions) with little more than boilerplate language.  *Compare Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) ("Here, the use of the term 'unskilled' is unhelpful because we cannot discern whether the ALJ actually found Craft to have [the abilities set forth in the RFC for unskilled work].  Most of the ALJ's discussion of Craft's medical history is merely a recitation of information contained in his medical records.").  "The important question is whether, in substance, the ALJ's question directed the VE to consider [the claimant's problems with concentration, persistence, or pace], not what particular words the ALJ used."  *Brinley v. Berryhill*, 732 F. App'x 461, 466 (7th Cir. 2018), *citing O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).  The Court cannot confidently answer that question in the affirmative for the reasons set forth above.

The Commissioner's argument is premised upon its foregone conclusion that the RFC finding and question to the VE sufficiently accounted for Kominique's moderate limitations in concentration, persistence, or pace.  But that is the question the Court must answer in the first instance, and one it cannot answer because the ALJ failed to adequately explain how and why he reached his RFC finding.  Also, any reliance upon the VE' testimony that a person with a variety of moderate difficulties could work so long as their productivity was not less than 90% is misplaced.  That remained an open question at the hearing.  The VE's response in and of itself left open the possibility that such a person may *not* be able to maintain their employment.  Remand is warranted in this case.

16

**V**

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on May 28, 2019.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE

17